PAUL KELLY, JR., Circuit Judge.
The government appeals from the district court’s order suppressing methamphetamine that gave rise to a conspiracy charge against Defendant Appellee, Frank Lawrence DeLuca. We have jurisdiction pursuant to 18 U.S.C. § 3731, and we reverse.

Background,

Mr. DeLuca was indicted on three drug-related counts: one count of conspiracy to possess more than 50 grams of actual methamphetamine with intent to distribute, 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); and two counts of distribution of methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(C). App. at 9-10. The two distribution charges arose out of events which occurred in April 1999, and are not at issue here. Id. at 10. The events that gave rise to the conspiracy charge, however, are pertinent. In June 1999, during a New Mexico traffic stop, a state police officer seized a quantity of methamphetamine from the trunk of a car in which Mr. DeLuca was a passenger. On Mr. DeLuca’s motion, id. at 12, the district court suppressed the methamphetamine as “the fruit of the illegal detention” of the car and its occupants. Id. at 78, 85.
On June 19, 1999, a New Mexico police officer was participating in a driver’s license and registration checkpoint on Interstate Highway 40 in New Mexico when he stopped the car in which Mr. DeLuca was a passenger. The car had three occupants: Tineke Meyers, the driver; William Boyer, the backseat passenger and owner of the car; and Mr. DeLuca, the defendant and front-seat passenger. Upon the officer’s request, Ms. Meyers produced a valid driver’s license, and Mr. Boyer produced the vehicle registration. Id. at 73. As Mr. Boyer handed the officer the registration, the officer “observed that his right hand was visibly shaking and all occupants in the vehicle appeared to be nervous.” Id. at 19 (statement of probable cause).
The officer inquired about the group’s travel plans. Ms. Meyer said they had left Colorado Springs, Colorado, the previous day to go to Phoenix, Arizona, and that now they were on their way back to Colorado Springs. A second officer, having arrived on the scene and overhearing the conversation, asked if their luggage was in the trunk. Ms. Meyer replied that they had no luggage and that there was nothing in the trunk. At this point, the first officer asked Ms. Meyer if she would pull over on to the highway shoulder and Ms. Meyer did so. The first officer had not returned Ms. Meyer’s license or the vehicle registration. Id. at 73-74.
Next, the first officer asked Ms. Meyer if he could search the trunk and Ms. Meyer consented. Upon opening the trunk, the officer “smelled an odd odor which [he] *1131 did not recognize,” and “observed small bundles of clothing, various tools and an open bag of ground coffee beans.” Id. at 19. The first officer obtained Ms. Meyer’s consent to run a K-9 dog unit over the vehicle. Two dogs independently alerted to the left side of the trunk. After searching that area of the trunk, the first officer discovered a “green, leafy substance in a small plastic baggy, located in the portion of the trunk designated for storage of the tire jack,” and, directly under that, “a 12 inch long object completely covered in white athletic type tape.” Id. All of the occupants of the car denied knowledge of either item. The first officer arrested all three occupants of the vehicle for possession of narcotics. When the first' officer slit open the taped package, he saw a “white substance,” which he believed to be “meth or a cocaine derivative.” Id.
Ruling on Mr. DeLuca’s motion to suppress the taped package, the district court found that the initial stop of the car as part of a highway safety program was “defensible.” Id. at 75. However, the court concluded that the stop became “indefensible” after Ms. Meyer produced a valid driver’s license and Mr. Boyer produced a valid registration. Id. at 76. The court found that Mr. Boyer’s shaking hand and the apparent nervousness of the car’s occupants was not enough to justify their continued detention and that the officer’s failure to return the license and registration precluded the detention from becoming consensual. Id. The court concluded that “[s]ince [the officer] lacked any particularized and objective basis for attributing criminal activity to any occupant of the car, the continued detention and his further inquiries were illegal.” Id. at 77. The court went on to hold that there was “a direct, palpable link between the detention of the car’s occupants and discovery of the package in the car’s trunk” and, therefore, that the methamphetamine must be suppressed as the “fruit of the illegal detention.” Id. at 79-80, 85.

Discussion

On appeal, the government concedes two points: (1) although the initial traffic stop was legal, the stop became illegal after Ms. Meyer had produced a valid driver’s license and Mr. Boyer had produced a valid vehicle registration; and (2) the officer’s failure to return the license and vehicle registration precluded the stop from becoming a consensual encounter. Aplt. Br. at 8. Therefore, the only issue we are confronted with on appeal is whether the methamphetamine found in the car’s trunk must be suppressed as “fruit” of Mr. De-Luca’s illegal detention.
“In reviewing the district court’s grant of a suppression motion, we accept the district court’s factual findings absent clear error and review de novo the district court’s determination of reasonableness under the Fourth Amendment to suppress the contraband evidence.” United States v. Olguin-Rivera, 168 F.3d 1203, 1204 (10th Cir.1999). We also review de novo the issue of whether a defendant has standing to challenge a search. United States v. Eylicio-Montoya, 70 F.3d 1158, 1161 (10th Cir.1995). In this case, the government only challenges the district court’s legal determination that the methamphetamine was the “fruit” of Mr. DeLuca’s illegal detention. Aplt. Br. at 6; see also App. at 73 (district court order stating that both parties rested upon the state police officer’s statement of probable cause to inform the court of the relevant facts).
Fourth Amendment rights are personal, and, therefore, “a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person’s property or premises.” United States v. *1132 Erwin, 875 F.2d 268, 270 (10th Cir.1989) (citations omitted). Based on this principle, we have held that without a possessory or property interest in the vehicle searched, “passengers lack standing to challenge vehicle searches.” Eylicio-Montoya, 70 F.3d at 1162 (citations omitted). However, “[t]his court has repeatedly recognized that although a defendant may lack the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle, the defendant may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the [defendant’s] illegal detention.” United States v. Nava-Ramirez, 210 F.3d 1128 (10th Cir.), cert. denied, 531 U.S. 887, 121 S.Ct. 206, 148 L.Ed.2d 144 (2000) (citations omitted). As Mr. DeLuca concedes, he did not have a possessory or property interest in the vehicle in which the methamphetamine was found, and therefore lacks standing to directly challenge the search of the vehicle. Aplee. Br. at 9. Mr. DeLuca does have standing, however, to contest the lawfulness of his own detention and to seek to suppress the methamphetamine as the fruit or derivative evidence of that illegal detention.
To suppress evidence as the fruit of his unlawful detention, Mr. DeLuca must make two showings: (1) “that the detention did violate his Fourth Amendment rights”; and (2) that there is “a factual nexus between the illegality and the challenged evidence.” Nava-Ramirez, 210 F.3d at 1131 (internal quotations and citation omitted). “Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not ‘fruit of the poisonous tree,’ either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct.” Id. (citations omitted). In this case, the government concedes that Mr. DeLuca’s continued detention was unlawful once the car’s occupants had produced a valid driver’s license and vehicle registration. Aplt. Br. at 8. Therefore, Mr. DeLuca must show that there is a factual nexus between his unlawful detention and the discovery of the methamphetamine.
In order to show such a factual nexus, “[a]t a minimum, [Mr. DeLuca] must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government’s unconstitutional conduct.” Nava-Ramirez, 210 F.3d at 1131 (footnote and citation omitted). Mr. DeLuca has not met this “but for” test, as we find that this case falls squarely within the holding of Nava-Ramirez. Mr. NavaRamirez was driving a car in which the otvner of the vehicle, Steven Wald, was a passenger. A state police officer stopped the vehicle for having a cracked windshield. Mr. Nava-Ramirez produced a valid driver’s license and Mr. Wald produced a valid vehicle registration, but the state police officer continued to detain the men based primarily on the smell of “burnt methamphetamine emanating from the vehicle’s interior” and the officer’s observations that both of the car’s occupants were nervous and that Mr. Wald’s eyes were “bloodshot and glassy.” Id. at 1130. The officer obtained the men’s consent to search the interior of the car. Before searching the passenger compartment, the officer conducted a pat-down search of both men and found two pipes in Mr. Wald’s pockets. The search of the passenger compartment of the car turned up nothing, but when the officer searched the trunk of the vehicle, he found two packages of methamphetamine. Both Mr. Nava-Ramirez and Mr. Wald were arrested. The district court denied Mr. Nava- *1133 Ramirez’s motion to suppress the methamphetamine. Id.
On appeal, Mr. Nava-Ramirez argued that the methamphetamine should have been suppressed as fruit of his own unlawful detention. We assumed, without deciding, that the detention was unlawful, but held that Mr. Nava-Ramirez had failed to demonstrate a factual nexus between his detention and the methamphetamine discovered in the trunk. We stated that “Nava-Ramirez put on no evidence to demonstrate that had he, at some point after the passenger compartment search was completed but before the trunk search began, requested permission or otherwise attempted to depart the scene, he would have been able to leave in Wald’s car.” Id. at 1131. Without some proof, we could not “simply speculate that Wald would have given Nava-Ramirez permission to take his car,” id., and we affirmed the district court’s denial of Mr. Nava-Ramirez’s suppression motion.
Just as in Nava-Ramirez, Mr. DeLuca has failed to show that had he requested to leave the scene of the traffic stop, he would have been able to do so in Mr. Boyer’s car.[1] Therefore, without any evidence to the contrary, we must assume that regardless of Mr. DeLuca’s presence, the car and its owner would have continued to be detained and the officer would still have found the methamphetamine. See, e.g., United States v. Carter, 14 F.3d 1150, 1154 (6th Cir.1994) (“Suppose that at the time of the driver’s arrest the police had summoned a taxi cab for [the defendant passenger] and told him he was free to leave. The marijuana would still have been discovered, because it was located in a van owned and controlled by [the driver] (who was not going anywhere until his vehicle had been searched) and not in a vehicle controlled by [the defendant passenger].”). The fact that in Nava-Ramirez, Mr. Nava-Ramirez was the driver of the vehicle, while in the present case, Mr. DeLuca was simply a passenger, is immaterial. Like Mr. DeLuca, Mr. Nava-Ramirez had no possessory or ownership interest in the vehicle searched and could only seek to have the evidence suppressed as fruit of his own allegedly unlawful detention.
In this case, the district court incorrectly held that the government must prove that the methamphetamine “was not the fruit of the illegal detention of the car and its occupants.” App. at 79 (emphasis added). The district court found that the factual nexus requirement was satisfied because, without the illegal detention of the car and all its occupants, the methamphetamine would never have been found. Id. at 85 (“Nava-Ramirez ... requires only a ‘but for’ factual nexus between the illegal detention of the car and its occupants ... and the evidence subsequently discovered. I have found that nexus clearly-established here.”). Nava-Ramirez requires a more focused inquiry. In order to meet his initial burden under Navar-Ra-mirez and demonstrate the required factual nexus, Mr. DeLuca must show that the methamphetamine would never have been found but for his, and only his, unlawful detention. To apply Nava-Ramirez as the district court did would effectively allow Mr. DeLuca to assert the Fourth Amendment rights of third parties (i.e., Ms. Meyer and Mr. Boyer). The government need only show that the methamphetamine was not the fruit of the illegal detention of Mr. *1134 DeLuca. It is not required to make this showing in relation to the car and all its occupants.
At oral argument, Mr. DeLuca argued that he has met the factual nexus requirement because one of the reasons that the arresting officer gave in his statement of probable cause for continuing to detain the vehicle and its occupants was that all the occupants “appeared to be nervous.” App. at 19. In effect, Mr. DeLuca is arguing that “but for” his apparent nervousness, the officer would not have continued to detain the vehicle and the methamphetamine would not have been discovered. We reject this argument as insufficient to meet the factual nexus requirement under the facts of this case.
The dissent suggests that Nava-Ra-mirez (1) does not control the outcome of this case because that case affirmed the denial of a motion to suppress and this case involves the grant of a motion to suppress, (2) improperly imposed an inap-posite standing analysis before misapplying the “fruit of the poisonous” tree analysis, and (3) conflicts with established precedent. The dissent also argues that we have employed the wrong standard of review (de novo), specifically that the district court’s findings concerning “fruit of the poisonous tree” must be evaluated for clear error.
Beginning with the standard of review, it is entirely appropriate to apply a de novo standard of review because the government’s argument on appeal is that Mr. DeLuca lacks standing to challenge the discovery of the methamphetamine in the trunk. Aplt. Br. at 1, 6, 7. The government correctly argues that Mr. DeLuca had no reasonable expectation of privacy in the search of the trunk, and the district court erred in concluding that because a passenger may challenge his own detention incident to a traffic stop, any evidence seized thereafter is necessarily linked to that detention without first satisfying the requirements of Nava-Ramirez. Given the admitted facts, this is a purely legal argument and de novo review is appropriate. The district court’s findings/conclusions are not insulated from review merely because we are reviewing its grant of a suppression motion. First, while we may defer to the district court’s findings of historical fact concerning a factual nexus, it is particularly inappropriate to defer to its ultimate conclusion given its overinclusive view of what constitutes a factual nexus and the lack of evidence suggesting such a nexus. Second, whether under the rubric of a factual nexus (standing), or a preliminary showing that the evidence sought to be suppressed is tainted by the unlawful detention, this link cannot be bypassed merely because we review a district court’s decision on derivative evidence claims under the clearly erroneous standard.
We do not disagree that a passenger has standing to raise a Fourth Amendment violation to a stop and detention, and may seek to have suppressed evidence found in the vehicle that may be fruit of the violation. But that does not obviate the requirement that the passenger adduce facts tending to show that the evidence sought to be suppressed is a product of his or her unlawful detention. Just as Fourth Amendment rights are personal and a defendant has the burden to demonstrate that his rights have been violated, United States v. Gama-Bastidas, 142 F.3d 1233, 1238 (10th Cir.1998) (internal quotations, citations omitted), he must also demonstrate a causal link between the violation and the contraband. See Rakas v. Illinois, 439 U.S. 128, 139-40, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (substantive Fourth Amendment law incorporates standing doctrines of injury in fact and assertion of one’s own legal rights). The Supreme *1135 Court has been reluctant to treat the interests of all those legitimately in a vehicle alike, id. at 148, 99 S.Ct. 421, and surely the derivative evidence doctrine is not independent of standing requirements.
Stated another way, in a derivative evidence claim, the defendant must make a threshold showing that the challenged evidence is tainted by the earlier Fourth Amendment violation. See Alderman v. United States, 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The dissent’s suggestion that the link be abandoned in traffic stop and detention cases where the car and its occupants are stopped and detained and a subsequent search occurs shortly after any Fourth Amendment violation ignores the rationale for standing — that the victim of the unlawful search or seizure assert his own rights, even if the case involves derivative evidence. Nor does it comport with the derivative evidence doctrine — in this case, the passenger’s unlawful detention was not even a “but for” cause of the subsequent search, let alone an exploitation of that unlawful detention. See Lewis v. Texas, 664 S.W.2d 345, 348-49 (Tx.Ct.Crim.App.1984) (“Once the initial legal detention became an illegal one, the [passenger’s] presence was irrelevant to the officer’s decision to search. Put another way, [the officer] could have let [the passenger] leave without hampering his ability to search the car. Thus, in no way was [the passenger’s] detention necessary to perform the search.”).
The fact that some of our past cases involving multiple occupants in a vehicle have not employed the factual nexus test does not somehow invalidate the analysis — standing arguments are not jurisdictional and may be waived. United States v. Dewitt, 946 F.2d 1497, 1499 (10th Cir.1991). Moreover, Nava-Ramirez does not stand alone — it is fully supported by United States v. Carter, 14 F.3d 1150 (11th Cir.1994), in an analogous factual setting.[2] Finally, even were we inclined to overrule Nava-Ramirez (which we are not), we are bound by it. See In re Smith, 10 F.3d 723, 724 (10th Cir.1993) (citations omitted) (stating three-judge panel is bound by opinion of prior panel “absent en banc consideration or a superseding contrary decision by the Supreme Court”).
Therefore, we REVERSE the district court’s order granting the motion to suppress and REMAND to the district court for further proceedings.

. In his brief on appeal, Mr. DeLuca "queries whether, in certain circumstances, such as those in the present matter, certain requests for permission or attempts to depart the scene would not lead to an independent probable cause for detainment....” Aplee. Br. at 19 n. 2. We do not render advisory opinions and, therefore, must wait until we are confronted with a case with the above facts to address the issue.

. Each case turns on its own evidence — unlike one treatise, we do not believe that standing on a passenger’s derivative evidence claim arising from an unlawful detention is unattainable, just that no facts were adduced in this case demonstrating an adequate link between the detention and the challenged evidence given the other occupants of the vehicle. See 3 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure § 9.1(d) at 333 & 333-34 n. 110 (2nd ed.1999) (suggesting that where a passenger challenges his unlawful detention the subsequent search of the vehicle cannot be viewed as fruit of that detention); Idaho v. Babb, 136 Idaho 95, 29 P.3d 406, 409-10 (2001) (case remanded for defendant to prove that “but for” an allegedly unlawful arrest, the methamphetamine would not have been found).