**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose MONTANO–CAMPA,**
**Defendant–Appellant.**

No. 01–2208.

United States Court of Appeals,
Tenth Circuit.

June 10, 2002.

---

Before SEYMOUR, BALDOCK, and HARTZ, Circuit Judges.

ORDER AND JUDGMENT *

BALDOCK, Circuit Judge.

A jury convicted Defendant Jose Montano–Campa on one count of conspiring to transport illegal aliens and three counts of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and (II) respectively. The district court sentenced Defendant to forty-eight months imprisonment. Prior to trial, Defendant unsuccessfully moved to suppress criminal evidence arising from the stop of a van in which he was a passenger. On appeal, Defendant argues, as he did in the district court, that the facts known to border patrol agents at the time of the stop were insufficient to

establish reasonable suspicion of the van's involvement in alien smuggling activity.[1] Our jurisdiction arises under 28 U.S.C. § 1291. Our standard of review is well established.

"When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. We accept the district court's factual findings unless those findings are clearly erroneous. The credibility of witnesses, the weight to be given evidence, and the reasonable inferences to be drawn from the evidence fall within the province of the district court. Keeping in mind that the burden is on the defendant to prove that the challenged seizure was illegal under the Fourth Amendment, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable *de novo*."

*United States v. McKissick*, 204 F.3d 1282, 1296 (10th Cir.2000) (quoting *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir.1999)). Applying this standard, we affirm.

I.

Border Patrol Agent Victor Guzman was the only witness to testify at the suppression hearing. Agent Guzman is a veteran of the Border Patrol assigned to Deming, New Mexico. Agents Martinez, Gutierrez,

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. As an initial matter, the Government argues on appeal that Defendant, as a mere passenger in the van, lacks standing under the Fourth Amendment to challenge evidence gathered from the stop of the van. Aside from any personal statements Defendant made as a result of his detention, the admissibility of which he certainly has standing to challenge, Defendant may well lack standing. *See United States v. DeLuca*, 269 F.3d 1128, 1131–35 (10th Cir.2001). Because Fourth Amendment standing is not jurisdictional, however, the Government waived the standing issue by failing to raise it before the district court. *See id.* at 1135 (citing *United States v. Dewitt*, 946 F.2d 1497, 1499 (10th Cir.1991)).

Aguilar, and Gardea assisted Agent Guzman in the investigation of this case. According to Agent Guzman's testimony, Agents Gutierrez, Aguilar, and Gardea were assigned to traffic checkpoint duty on Highway 180 north of Deming during the early morning of July 23, 2000. The mobile checkpoint on Highway 180, located about 40 miles from the United States/Mexico border, is open approximately six days each year. Highway 180 circumvents the permanent border patrol checkpoints on Interstates 10 and 25.

At approximately 3:00 a.m. on July 23, the agents observed a Ford Thunderbird approach the checkpoint. Agent Gutierrez recognized the driver of the vehicle as Benito Perez. An older female passenger accompanied Perez. Agent Gutierrez knew Perez "as an alien smuggler," "who had been apprehended by the Deming station agents ... approximately seven times before." Perez informed Agent Gutierrez he was returning his mother to Arizona. Perez consented to a check of the vehicle's trunk. The trunk was empty and the vehicle did not appear to contain any luggage. During the check, Agent Gutierrez asked Perez if he knew the Defendant Jose Montano–Campa. Perez stated he did not know Defendant. Agent Guzman made this inquiry because border patrol agents had observed Defendant driving a vehicle registered to Perez a few days earlier. Based upon their training and experience, the agents at the Highway 180 checkpoint believed Perez may have been scouting for border patrol checkpoints and agents as part of an alien smuggling scheme.

Subsequently, Agent Gardea entered a grocery store in Deming on the evening of July 23 and observed Defendant Campa and Benito Perez purchasing "a large amount of groceries." Agent Gardea remembered Perez had earlier claimed not to know Defendant. Agent Gardea believed the two men were buying groceries to feed illegal aliens. Agent Gardea informed the other agents of his observations. The agents decided to establish surveillance of Perez' residence in Deming.

Two unmarked units performed surveillance of the residence. Agent Gutierrez was in one unit. Agents Gardea and Aguilar were in the second unit. Agents Guzman and Martinez positioned themselves in a marked unit along Highway 180. The agents watching the residence observed Defendant and Perez arrive and enter the residence together around 11:00 p.m. A while later, Defendant left the residence in a van and, followed by Agent Gutierrez, traveled to his home in a local trailer park. Agents Gardea and Aguilar next observed Perez leave his residence in his Ford Thunderbird and travel north. Perez turned on Arrowhead Street off the southern tip of Highway 180 north. The agents decided not to follow Perez further for fear of detection.

Two hours later, at around 3:30 a.m. on July 24, Agents Gardea and Aguilar observed Perez in his Ford Thunderbird turn off Arrowhead and head north on Highway 180. Perez traveled to a rest area just north of the mobile checkpoint. The checkpoint was closed. At that point, the agents observed Perez turn around and head back towards Deming. The agents again believed Perez was scouting the checkpoint on Highway 180. Directly thereafter, Agent Gutierrez observed the Thunderbird returning to Arrowhead.

Around thirty minutes later, at approximately 4:50 a.m., Agent Gutierrez observed a "large" Dodge van traveling north on Highway 180. According to Agent Guzman, alien smugglers commonly use large vans to transport large numbers of aliens. Additionally, smugglers travel in the early morning hours hoping to take advantage of shift changes in border patrol

agents. Agent Gutierrez radioed Agents Guzman and Martinez and informed them of the van. As the van passed, Agent Guzman pulled out approximately fifteen feet behind it. Agent Guzman immediately recognized the van as the one that had been parked outside Perez' residence a few weeks earlier.[2] The van had temporary tags which smugglers frequently use to conceal the true identity of a vehicle's owner. Guzman observed that the van appeared to contain only four passengers but was "riding very low." At that point, Agents Guzman and Martinez decided to stop the van. Defendant Campa was seated in the front passenger seat. The agents located fifteen undocumented aliens inside the van.

## II.

As previously noted, Defendant's challenge to the evidence turns solely on the legality of the stop. In *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), the Supreme Court recently reiterated the law we are to apply in cases of this nature. The Fourth Amendment's protection against unreasonable searches and seizures extends to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Id.* at 750. In such cases, the Fourth Amendment is satisfied if reasonable suspicion of criminal activity supports the stop.[3] *Id.* In reviewing a finding of reasonable suspicion, we, like the district court, consider the totality of the circumstances to decide whether the detaining agents had a "particular and objective basis" for suspecting

legal wrongdoing. *Id.* A determination that reasonable suspicion exists need not rule out the possibility of innocent behavior. *Id.* at 753. The process of determining reasonable suspicion allows law enforcement officials to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *Id.* at 750–51.

In this case, we have no difficulty concluding reasonable suspicion supported the stop. Guzman testified that Perez first traveled through the Highway 180 mobile checkpoint at 3:00 a.m. on July 23, 2000. The agents at the checkpoint knew Perez as "an alien smuggler" who had numerous encounters with the border patrol. Perez informed the agents that he was traveling to Arizona, but the vehicle contained no luggage. Perez claimed he did not know Defendant, but later that day Agent Gardea spotted Perez and Defendant together in Deming buying a large amount of groceries. Agents later saw Perez and Defendant arrive at Perez' residence. At 3:30 a.m. on July 24, agents again observed Perez traveling north along Highway 180 in the vicinity of the mobile checkpoint area. Perez passed the closed checkpoint and then turned around and returned to Deming. Then, at 4:50 a.m. the same morning, Agent Guzman, who was fully informed of the foregoing events, observed a large, apparently heavily weighted van heading north on Highway 180 away from Deming. Agent Guzman

---

**2.** The record does not indicate whether this van was the same van agents witnessed Defendant driving from Perez' residence a few hours earlier.

**3.** Reasonable suspicion to stop is a less demanding standard than probable cause to arrest. Reasonable suspicion may be established with information that is different in

quantity or content than that required to establish probable cause, and may arise from information that is less reliable than that required to show probable cause. *United States v. Tuter,* 240 F.3d 1292, 1296 n. 2 (10th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 195, 151 L.Ed.2d 137 (2001).

recognized the van as one he had seen at Perez' residence a few weeks earlier. Considering the totality of the circumstances and giving due weight to the factual inference drawn by the border patrol agents that Perez and Defendant were engaged in an alien smuggling scheme, we hold that Agent Guzman at the time of the stop "had a particularized and objective basis" for suspecting the occupants of the van were engaged in criminal activity.

AFFIRMED.