**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 15 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE DE JESUS LIMON-SOTO,

    Defendant-Appellant.

No. 04-1021
(D. Colo.)
(D.Ct. No. 03-CR-206-RB)

**ORDER AND JUDGMENT**[*]

Before **TACHA,** Chief Circuit Judge, and **PORFILIO** and **BRORBY**, Senior Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Jose De Jesus Limon-Soto, a federal prisoner represented by counsel, appeals his conviction for unlawful reentry by a previously-deported alien, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2).  Mr. Limon-Soto received a sentence of fifteen months imprisonment, followed by a two-year term of supervised release.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm Mr. Limon-Soto's conviction and sentence.

## A.  Background

A Denver police officer pulled Mr. Limon-Soto over for an alleged "routine traffic stop."  At a later suppression hearing, the officer failed to appear to testify as to the circumstances of the alleged traffic stop, and no criminal charges were filed against Mr. Limon-Soto for any traffic violation.  Sometime during the stop, Mr. Limon-Soto gave the officer a Mexican identification card.  The officer then contacted the Law Enforcement Support Center within the Bureau of Immigration and Customs Enforcement, discovered Mr. Limon-Soto's status as a deported felon, and took him into custody.  At some point during the stop, Mr. Limon-Soto told the officer of his prior conviction for a felony.  Local authorities released him into the custody of Bureau of Immigration and Customs Enforcement agents who interviewed him twice; during both interviews, Mr. Limon-Soto admitted being previously deported and illegally reentering the country.

Following his indictment, Mr. Limon-Soto filed a motion to suppress all evidence gained from the traffic stop and subsequent interviews. As previously stated, the police officer who conducted the traffic stop failed to appear at the suppression hearing to testify as to the reason or cause for the traffic stop. The government called only one other witness: a special agent with the Bureau of Immigration and Customs Enforcement. The agent did not possess an independent recollection of what he advised Mr. Limon-Soto before interviewing him, other than to state Mr. Limon-Soto read, said he understood, and signed Form I-214, which advised him in Spanish of his *Miranda* rights. Because Form I-214 was not admitted into evidence and the agent could not recall what he discussed with Mr. Limon-Soto, the district court sustained Mr. Limon-Soto's objections to the agent's testimony and dismissed him as a witness.

Thereafter, the district court issued an order on Mr. Limon-Soto's motion to suppress, granting it in part. The district court noted "the government did not present evidence about the circumstances of [Mr. Limon-Soto's] detention and arrest or about the statements made by the defendant to the Denver police or to [the immigration] agent ...." Because the government failed to meet its burden of establishing by a preponderance of the evidence that the traffic stop was reasonable within the meaning of the Fourth Amendment, the district court

determined it constituted an unreasonable seizure. Similarly, it determined the government failed to meet its burden to establish by a preponderance of the evidence that Mr. Limon-Soto's statements to authorities were knowing and voluntary, or not fruit of the poisonous tree. Accordingly, the district court granted Mr. Limon-Soto's motion to suppress his statements to the police officer and the immigration agents.

As to suppression of Mr. Limon-Soto's identity, the district court pointed out the parties conceded the Bureau of Immigration and Customs Enforcement learned of Mr. Limon-Soto's "immigration status and his concomitant criminal history" only as a result of the identity information obtained from Mr. Limon-Soto subsequent to the illegal traffic stop. Nevertheless, the district court denied the motion to suppress his identity, relying on *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984), which states "the 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest ...." With respect to Mr. Limon-Soto's Mexican identification card and his immigration file, the district court relied on *United States v. Guzman-Bruno*, 27 F.3d 420 (9th Cir. 1994), in determining Mr. Limon-Soto's "illegal arrest would not serve to suppress his identity since there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to

the official file or other independent evidence." *Id.* at 422 (quotation marks and citations omitted). In addition, the district court concluded Mr. Limon-Soto lacked standing to challenge the admissibility of his immigration file because he possessed no legitimate expectation of privacy in the file. Following the suppression hearing, Mr. Limon-Soto pled guilty to unlawful reentry by a previously-deported alien, but reserved his right to appeal the denial of his motion to suppress his identity and immigration file.

## Discussion

Mr. Limon-Soto now appeals the district court's decision denying his motion to suppress his identity and immigration file, claiming the district court improperly applied the disputed legal proposition in *Lopez-Mendoza*, which holds "the 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." 468 U.S. at 1039. Mr. Limon-Soto contends this proposition, as applied to the facts in *Lopez-Mendoza*, only pertains to a jurisdictional objection when a defendant is summoned to a deportation hearing following an unlawful arrest, and not to evidence offered against him. *Id.* at 1038-39. With respect to the submission of evidence obtained as a result of an unlawful arrest, Mr. Limon-Soto points out the

-5-

*Lopez-Mendoza* decision specifically states such evidence is suppressible in a criminal proceeding if the link between the evidence and the unlawful conduct is "not too attenuated." *Id.* at 1040-41.

In making this argument, Mr. Limon-Soto acknowledges the Fifth and Ninth Circuits, like the district court here, extended or applied the *Lopez-Mendoza* disputed identity proposition to identity evidence obtained during an illegal stop. *See United States v. Roque-Villanueva*, 175 F.3d 345, 346 (5th Cir. 1999) (relying on the *Lopez-Mendoza* identity proposition to conclude evidence of a defendant's identity is not suppressible in a criminal proceeding even if he was illegally stopped); *Guzman-Bruno*, 27 F.3d at 422 (same). In contrast, Mr. Limon-Soto points out the Eighth Circuit recognizes the distinction in *Lopez-Mendoza* between applying this proposition to a jurisdictional challenge, rather than an evidentiary challenge, like the one presented here. *See United States v. Guevara-Martinez*, 262 F.3d 751, 753-54 (8th Cir. 2001) (explaining the Supreme Court addressed the *Lopez-Mendoza* evidentiary challenge differently, acknowledging the "'general rule in a criminal proceeding ... that statements and other evidence obtained as a result of an unlawful, warrantless arrest *are suppressible* if the link between the evidence and the unlawful conduct is not too attenuated'").

In response, the government acknowledges *Lopez-Mendoza* does not stand for the proposition "that all evidence of identity is beyond the reach of the exclusionary rule in a criminal prosecution." It recognizes the split in circuit interpretation of *Lopez-Mendoza* and suggests we look at the evidence in terms of the attenuation principle discussed in *Lopez-Mendoza*. In so doing, it claims the path from the police officer's apparent observation of a traffic impropriety to federal files reflecting Mr. Limon-Soto's criminal and immigration records is "too long" and the connection "too attenuated" to justify application of the exclusionary rule. Because both the government and Mr. Limon-Soto rely on the attenuation factor applied in *Lopez-Mendoza* and we may resolve this case on that basis, we need not address the issue of whether the disputed identity proposition in *Lopez-Mendoza* applies to the identity evidence challenged here.[1]

Having reviewed the parties' arguments, we turn to the appropriate standard of review and applicable law. On appeal from a motion to suppress, we review *de novo* the district court's conclusions of law, *see United States v. Minjares-Alvarez*, 264 F.3d 980, 983 (10th Cir. 2001), and "may affirm [the district court]

---

[1] Both parties correctly point out that this circuit, unlike the Fifth, Eighth and Ninth Circuits, has not addressed whether the identity language in *Lopez-Mendoza* applies beyond jurisdictional questions to identity evidence obtained from an illegal stop or arrest. *See, e.g., United States v. White*, 326 F.3d 1135, 1137 n.1 (declining to address this issue, and resolving case on other grounds).

on any grounds supported by the record." *White*, 326 F.3d at 1138 (quotation marks and citation omitted). "In reviewing the denial of a motion to suppress, .... [w]e view the evidence on appeal in the light most favorable to the government." *United States v. Botero-Ospina*, 71 F.3d 783, 785-86 (10th Cir. 1995) (*en banc*). The government bears the burden of showing by a preponderance of the evidence that the traffic stop was reasonable within the meaning of the Fourth Amendment. *See United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Botero-Ospina*, 71 F.3d at 787. While the Supreme Court has stated that "[i]n the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment," it has limited this to situations where the police officer has a "reasonable suspicion that a person may be involved in criminal activity." *Hiibel v. Sixth Jud. Dist. Ct. of Nevada*, ___ U.S. ___, 124 S. Ct. 2451, 2458 (June 21, 2004) (*relying on INS v. Delgado*, 466 U.S. 210, 216 (1984); *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)). Similarly, this court has held that "[a]n officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check and issue a citation," if the initial stop was reasonable, as determined by whether: 1) "the officer's action was justified

at its inception," and 2) "the action was reasonably related in scope to the circumstances that first justified the interference." *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994) (quotation marks and citation omitted).

"To successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment rights" and then demonstrate "a factual nexus between the illegality and the challenged evidence." *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (quotation marks and citation omitted). To establish that a factual nexus exists, "[a]t a minimum, a defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct." *Id.*; *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001).

Only if the defendant meets these burdens, "must the government prove that the evidence sought to be suppressed is not fruit of the poisonous tree, either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." *Nava-Ramirez*, 210 F.3d at 1131

(quotation marks and citations omitted). With respect to these exclusionary factors, the Supreme Court has said the question is whether "the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Brown v. Illinois*, 422 U.S. 590, 598-99 (1975) (quotation marks and citation omitted).

In addressing the issue of attenuation, the Supreme Court points out no single fact is dispositive. *Id.* at 603. A *Miranda* warning is an important factor, along with other factors, such as the temporal proximity of the arrest and statement, the presence of intervening circumstances, the purpose and flagrancy of the official misconduct, and the voluntariness of the statement. *Id.* at 603-04. Similarly, this court has used these factors to determine whether illegally seized evidence has been purged of the primary taint in an illegal traffic stop situation. *See United States v. King*, 990 F.2d 1552, 1563-64 (10th Cir. 1993) (explaining the voluntariness of a defendant's act is a "threshold requirement" when the government asserts the taint of the illegality has been purged by that act).

Relying on these principles in addressing the issues in this case, it is clear the government did not meet its burden of showing by a preponderance of the

evidence that the traffic stop was reasonable within the meaning of the Fourth Amendment, because it failed to produce any evidence on the purpose or cause for the stop. *See Salzano*, 158 F.3d at 1111. While the government correctly contends a police officer is free to stop a person and ask for identification without implicating the Fourth Amendment, this proposition is applicable where the police officer has a "reasonable suspicion that a person may be involved in criminal activity." *Hiibel*, 124 S. Ct. at 2458. This is not the situation here, and therefore, the government's argument cannot be successfully advanced.

Next, for the purpose of suppressing evidence from the illegal stop, it is clear from the record Mr. Limon-Soto met his necessary burdens. First, because "[a] traffic stop is a seizure within the meaning of the Fourth Amendment," *Botero-Ospina*, 71 F.3d at 786, and the government failed to present any evidence on the reasonableness of the stop, it was not difficult for Mr. Limon-Soto to show the traffic stop violated his Fourth Amendment rights. Second, because the parties conceded the Bureau of Immigration and Customs Enforcement learned of Mr. Limon-Soto's immigration status and criminal history only as a result of the identity information obtained from him after the illegal traffic stop, Mr. Limon-Soto clearly met his burden of showing a factual nexus existed between the illegality of the stop and the challenged evidence. S*ee Nava-Ramirez*, 210 F.3d at

1131. In other words, the parties conceded the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct. *Id.*; *DeLuca*, 269 F.3d at 1132.

However, as previously noted, this does not conclude our inquiry. The burden next rests on the government to show the evidence sought to be suppressed is not fruit of the poisonous tree, either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct. *Nava-Ramirez*, 210 F.3d at 1131. Because both parties rely on attenuation to support their arguments, we focus on that factor and consider whether evidence of Mr. Limon-Soto's identity, through his identification card, came from exploitation of the illegality of the stop, or instead by means sufficiently distinguishable to be purged of the primary taint. *See Brown,* 422 U.S. at 599; *White*, 326 F.3d at 1139.

In this case, if we look at the attenuation factors considered in determining whether illegally seized evidence has been purged of the primary taint, s*ee Brown*, 422 U.S. at 603-04; *King*, 990 F.2d at 1563-64, and view the evidence on appeal in the light most favorable to the government, it appears evidence of Mr. Limon-

Soto's identity came by means sufficiently distinguishable to be purged of the primary taint. First, while it is unclear whether the officer first asked Mr. Limon-Soto for his identification before he voluntarily submitted it, or if Mr. Limon-Soto offered it himself without being asked, nothing in the record or the arguments on appeal establishes it was involuntary, regardless of whether the police officer had reasonable suspicion to make the stop and thereby request identification. In addition, while arguably no intervening circumstance or temporal proximity occurred between the illegal stop, his identification, and the subsequent arrest, the record is void of any exploitation of the illegality of the stop or flagrancy of official misconduct in obtaining Mr. Limon-Soto's identity. *See White*, 326 F.3d at 1139-40 (finding the police did not exploit an illegal search to obtain the defendant's identity).

Having determined, under the circumstances presented, that evidence of Mr. Limon-Soto's identity came by means sufficiently distinguishable to be purged of the primary taint, we turn to his request to suppress his immigration record or file. With respect to public records, we have said that while "[t]he exclusionary rule enjoins the Government from benefitting from evidence it has unlawfully obtained[,] it does not reach backward to taint information that was in official hands prior to any illegality." *White*, 326 F.3d at 1140. Similarly, the

Supreme Court has said "the illegality of [a defendant's] detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." *United States v. Crews*, 445 U.S. 463, 474 (1980). Thus, in this case, the illegality of Mr. Limon-Soto's traffic stop did not deprive the government of the opportunity to prove his guilt for unlawful reentry into the United States after deportation by the introduction of evidence wholly untainted by the illegal traffic stop, which consisted of his pre-existing immigration record showing deportation for a felony conviction.[2]

## Conclusion

Under the applicable law and the circumstances presented in this case, we conclude the district court did not err in denying Mr. Limon-Soto's motion to suppress his identity and his immigration file. Accordingly, we **AFFIRM** Mr. Limon-Soto's conviction and sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

[2] Because we may resolve the suppression issue on these grounds, we do not address the government's argument, in reliance on Fifth Circuit precedent, that Mr. Limon-Soto lacks a possessory or proprietary interest in his pre-existing immigration file. *See United States v. Pineda-Chinchilla*, 712 F.2d 942, 943-44 (5th Cir. 1983).