**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

IGNACIO ZAVALA,

      Defendant-Appellant.

No. 05-3353
(District of Kansas)
(D.C. No. 05-CR-10040-01-WEB)

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOSE ALBERTO LOPEZ-MORALES,

      Defendant-Appellant.

No. 05-3303
(District of Kansas)
(D.C. No. 05-CR-10040-02-WEB)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **EBEL**, and **MURPHY**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Introduction

We have consolidated the present appeals for purposes of disposition. A grand jury indicted both Ignacio Zavala and Jose Alberto Lopez-Morales on one count of possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). Zavala and Lopez-Morales both filed motions to suppress the contraband. The United States District Court for the District of Kansas denied their motions to suppress. Zavala and Lopez-Morales entered conditional guilty pleas and the district court sentenced each man to sixty months' incarceration. Zavala and Lopez-Morales appeal the district court's denial of their motions to suppress. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms** the district court's ruling.

## II. Background

On February 16, 2005, Zavala was driving his Chevrolet van east on Interstate 70 in Kansas. Lopez-Morales was riding in the passenger seat of the van. At approximately 10:20 in the evening, Kansas Highway Patrol Trooper Jerrad Goheen pulled Zavala over after noticing Zavala's van had only one working headlight. When Goheen approached the van, Zavala did not roll down his window. Instead, he attempted to talk to Goheen through the small vent window on his door. Goheen asked Zavala to open the van door so they could

talk. When Zavala complied with Goheen's request, Goheen noticed an overwhelming smell of air freshener emanating from the van.

Goheen explained that he stopped Zavala's vehicle because only one of its headlights was operational. Zavala told Goheen he knew of the problem. He showed Goheen a warning ticket he had received from another Kansas Highway Patrol Officer, Trooper Troy Smith. Smith had stopped Zavala for the same problem roughly an hour earlier. Zavala also produced his license and proof of insurance.

Goheen asked Zavala and Lopez-Morales where they were from and where they were going. Zavala replied that they had been visiting family in Denver for about a week and were headed to North Carolina. Goheen next asked to see Lopez-Morales' identification. Zavala translated Goheen's request into Spanish, then translated Lopez-Morales' response: Lopez-Morales had no identification because he had just been released from jail, where he had been incarcerated for drug possession.

Goheen went to his patrol car and requested a driver's license and criminal history check on Zavala. While awaiting a response from dispatch, he contacted Trooper Smith and inquired about the previous traffic stop. Smith told Goheen he had done a quick and routine traffic stop and had issued Zavala a warning citation without performing any additional investigation. After he finished talking to

Smith, dispatch informed Goheen that Zavala's driver's license was valid; at that point, dispatch did not give Goheen information on Zavala's criminal history.

Goheen returned to the van, where Zavala and Lopez-Morales had been waiting. He returned Zavala's license and insurance information and told Zavala he could probably find a replacement headlight at a nearby Wal-Mart. Goheen told Zavala and Lopez-Morales to have a safe trip, then backed away from the van. As Zalava prepared to pull away, however, Goheen walked back toward the van and asked whether he could ask the men a couple of quick questions. Zavala agreed. Goheen asked whether Zavala and Lopez-Morales had a couple of minutes, and Zavala indicated they did.

Goheen asked Zavala and Lopez-Morales whether they knew the address of the family members with whom they had been staying in Denver. Zalava told Goheen he did not know the address. Goheen then asked Lopez-Morales about his former conviction. Lopez-Morales informed Goheen he was convicted for possession of a small amount of marijuana. Goheen inquired as to whether the men had guns, drugs, or large amounts of cash with them. After receiving a negative response, Goheen asked, "You don't mind if I look inside the car?" Zavala told Goheen he did not mind.

Goheen requested that Zavala and Lopez-Morales step out of their vehicle and stand by the front of the van. When Lopez-Morales exited the van, Goheen noticed the distance between the van's floor and ceiling seemed too short. Upon

-4-

seeing this, Goheen suspected the van had been altered to accommodate either a false floor or false ceiling. Goheen therefore began to inspect the van to determine whether there was a hidden compartment. Goheen noted the bolts holding down the rear seats had been scratched as though they had been removed. He also observed the van's carpeting looked as though it had been glued down in an unusual way. As Goheen carried out his inspection, he received a report from dispatch informing him that Zavala had a criminal history involving drugs. After receiving the report, Goheen continued to scrutinize the van. He observed the van's seat belts were bolted not to the head liner itself, but to some point beyond the head liner. Goheen felt sure the seat belts had not been factory-mounted this way.

Goheen determined he wanted to perform a more thorough inspection of the van. He asked whether Zavala would mind following him to the Highway Patrol office so he could inspect the van more closely. After consulting with Lopez-Morales, Zavala declined Goheen's request.

Goheen contacted a sheriff's officer who was nearby and asked for assistance. He then resumed his examination of the van. Further inspection lead Goheen to believe there was a false compartment in the ceiling of the van. When he asked Zavala whether the ceiling of the van had been modified, Zavala told him it had not been altered. When the sheriff's officer Goheen had called arrived on the scene, the officer agreed with Goheen that the ceiling of the van had been

altered. Goheen instructed Zavala and Lopez-Morales to get in their van and follow him to the Highway Patrol office. The men complied with Goheen's request. Inspection at the Highway Patrol office revealed that a compartment had been welded into the ceiling of the van. Law enforcement officials discovered approximately 271 pounds of marijuana in the compartment.

A grand jury charged both Zavala and Lopez-Morales in a one-count indictment with possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). Zavala and Lopez-Morales each filed motions to suppress the drugs. The district court combined their motions and held a suppression hearing, during which it heard testimony from Troopers Goheen and Smith and viewed the patrol car's video tape of Goheen's stop. The district court issued a Memorandum and Order denying defendants' motions to suppress.

Lopez-Morales and Zavala entered conditional guilty pleas, waiving their rights to appeal or collaterally attack their prosecutions, convictions, and sentences except with respect to the district court's denial of their motions to suppress. The court sentenced each man to sixty months' imprisonment followed by four years' supervised release. Zavala and Lopez-Morales appeal the district court's denial of their motions to suppress.

**III. Discussion**

*A. Lopez-Morales' Standing to Seek Suppression of the Contraband*

The government asserts this court need not reach the merits of Lopez-Morales' claim on appeal because Lopez-Morales, as a mere passenger in a van belonging to Zavala, has no standing to challenge the constitutionality of Goheen's search. Whether a defendant has standing to challenge a search is a legal question subject to *de novo* review. *United States v. DeLuca*, 269 F.3d 1128, 1131 (10th Cir. 2001).

Because Fourth Amendment rights are personal, "a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or premises." *Id*. (quotation omitted). Accordingly, "without a possessory or property interest in the vehicle searched, passengers lack standing to challenge vehicle searches." *Id*. at 1132 (quotation omitted). That said, when a defendant "lack[s] the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle, the defendant may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the [defendant's] illegal detention." *Id*. (second alteration in original) (quotation omitted).

"To successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment

rights. The defendant then bears the burden of demonstrating a factual nexus between the illegality and the challenged evidence." *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (citation and quotation omitted). To satisfy the nexus requirement, a defendant must show the evidence he seeks to have suppressed "would never have been found but for his, and only his, unlawful detention." *DeLuca*, 269 F.3d at 1133 (emphasis omitted). Thus, when the detained defendant is a mere passenger in vehicle belonging to another person, this court has determined he must show "that had he . . . requested permission or otherwise attempted to depart the scene, he would have been able to leave in [the owner's] car." *Nava-Ramirez*, 210 F.3d at 1131.

Lopez-Morales concedes he has no possessory interest in Zavala's van. Nonetheless he argues he has standing to challenge Goheen's search of Zavala's van because his detention violated the Fourth Amendment and because a factual nexus exists between that violation and the contraband evidence he seeks to suppress.

The evidence does not support Lopez-Morales' contention. Even if we assume Lopez-Morales' detention was unconstitutional, no factual nexus links his detention and discovery of the marijuana found in Zavala's van. Lopez-Morales adduced no evidence demonstrating the marijuana would not have come to light but for his allegedly unconstitutional detention. Nor did he "put on . . . evidence to demonstrate that had he . . . requested permission or otherwise attempted to

depart the scene, he would have been able to leave in" Zavala's van. *Id*. Because

Lopez-Morales failed to show a factual nexus between his allegedly illegal

detention and the discovery of the marijuana in Zavala's van, he has no standing to

challenge the search. We therefore affirm the district court's denial of Lopez-

Morales' motion to suppress.[1]

### B. Zavala's Motion to Suppress

Zavala argues Goheen violated his Fourth Amendment rights when he

detained and searched his van on the night of February 16, 2005. Accordingly, he

contends the district court erred in denying his motion to suppress the marijuana

found in his van. This court accepts the factual findings underlying a district

court's decision to deny a suppression motion unless those findings are clearly

erroneous. *Id*. "We review *de novo* the ultimate determination on the

reasonableness of a search or seizure under the Fourth Amendment." *Id*.

### (1) Initial Traffic Stop

Zavala concedes Goheen's initial stop of his van, based on the van's

nonfunctioning headlight, was proper. He argues, however, that once he produced

a valid license and proof he was entitled to operate the van, Goheen was required

to release him without further questioning. "A law enforcement officer conducting

---

[1]Although the district court denied Lopez-Morales' motion to suppress on the merits, we can affirm its decision "on any grounds supported by the record." *United States v. White*, 326 F.3d 1135, 1138 (10th Cir. 2003).

a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation." *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005) (quotation and alteration omitted). Similarly, "an officer may ask routine questions about the driver's travel plans." *Id*. In light of this court's precedent, we conclude Goheen did not violate Zavala's Fourth Amendment rights when, during the course of the initial traffic stop, he ran a computer check on Zavala's identity and questioned Zavala about his itinerary.

*(2) Consent to Further Questioning and to Search of Van*

Zavala also contends Goheen violated his Fourth Amendment rights when, after Goheen told him to have a safe trip and momentarily backed away from his van, Goheen returned and asked whether Zavala would mind answering additional questions. Zavala asserts the "coercive effect" of the initial traffic stop had not yet worn off, and he was not free to decline Goheen's request to make further inquiries. Appellant's Br. at 7. Similarly, he argues he was not free to decline Goheen's request to search the van due to the "coercive momentum" from the initial traffic stop. *Id*. at 8. In short, Zavala argues his consent—both to answer additional questions and to search the van—was not freely given.

A traffic "stop generally ends when the officer returns the driver's license, registration, and insurance information." *United States v. Manjarrez*, 348 F.3d 881, 885 (10th Cir. 2003). An officer may engage in further "questioning unrelated to the traffic stop," however, "if the detention becomes a consensual

-10-

encounter." *Id*. (quotation omitted). Likewise, a law enforcement officer may conduct a warrantless search of a vehicle "if a person in control of the vehicle has given his voluntary consent to the search." *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001). "Whether voluntary consent was given is a question of fact, determined by the totality of the circumstances and reviewed for clear error." *Id*.

Here, the district court noted Goheen did not use any show of authority or coercion that would have pressured Zavala to remain and answer his questions. It further observed Goheen's request to ask additional questions conveyed clearly that Zavala's continued participation in the encounter was voluntary, and that Zavala promptly agreed to answer the questions. Based on these observations, the district court concluded the exchange between Zavala and Goheen became consensual after Zavala told Goheen he would not mind answering additional questions. For the same reasons, the district court concluded Zavala voluntarily consented to Goheen's request to search the vehicle. Zavala tenders no evidence that Goheen coerced him to remain and answer additional questions or to consent to a search of his vehicle, and offers no authority to support his "coercive momentum" argument. We therefore conclude the district court did not clearly err when it determined Zavala gave his consent freely.

*(3) Probable Cause*

Zavala argues he withdrew consent to further searches of his van when he declined to voluntarily follow Goheen to the Highway Patrol station. Moreover, he insists Goheen lacked probable cause to continue searching his van after he withdrew his consent. Zavala therefore contends Goheen violated his Fourth Amendment rights when Goheen continued to search his van after he had withdrawn his consent.

Even if Zavala's refusal to accompany Goheen to the Highway Patrol office constituted a withdrawal of his consent to additional searches of his van, Goheen was entitled to keep searching the vehicle if his search was supported by probable cause. *See Ornelas v. United States*, 517 U.S. 690, 693 (1996) (noting a law enforcement officer may conduct a warrantless search of a vehicle if the officer's search is supported by probable cause). Whether an officer had probable cause to search is a question this court reviews *de novo*. *United States v. Ledesma*, 447 F.3d 1307, 1316 (10th Cir. 2006). In determining whether an officer had probable cause, we "look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id*. (quotations omitted). When conducting a totality of the circumstances review, no single factor is dispositive, and factors that may be of limited significance in isolation may combine to give rise to probable cause. *Id*. "The ultimate question is whether the facts and circumstances within the officers'

knowledge . . . are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id*. (quotations omitted).

"[V]isual evidence of a hidden compartment, without more, may provide probable cause to conduct or expand a search." *Id*. at 1317.

> Whether probable cause to search a vehicle can be based on evidence of a hidden compartment depends on two factors: (1) the probative value of the evidence—that is, the likelihood that there really is a hidden compartment; and (2) the likelihood that a vehicle with a hidden compartment would, in the circumstances, be secreting contraband.

*United States v. Jurado-Vallejo*, 380 F.3d 1235, 1238 (10th Cir. 2004). At the time Zavala told Goheen he did not want to follow Goheen to the Highway Patrol office—thereby allegedly withdrawing his consent—Goheen was aware of several factors probative of the existence of a secret compartment in Zavala's van. Goheen observed the distance between the floor and ceiling of Zavala's van was abnormally short, indicating the existence of an unusual amount of space beneath the floor or above the ceiling. He also noted the seat-belts were not attached to the ceiling in a normal fashion, the rear seat bolts were scratched as though they had been removed, and the van's carpeting was glued down in an unusual fashion. These modifications strongly suggest the existence of a secret compartment. Moreover, "[i]f the vehicle had a hidden compartment, it was highly likely to contain contraband." *Id*. As this court has noted previously, "it is difficult to

-13-

imagine a licit purpose for a large hidden compartment in a vehicle the size of a Chevy van." *Ledesma*, 447 F.3d at 1318.

Evidence of the existence of a hidden compartment, standing alone, may have been sufficient to establish probable cause to search Zavala's van. *Id*. at 1317. In this case, however, evidence suggesting a secret compartment was not the only factor that supported a finding of probable cause. By the time Zavala allegedly withdrew his consent to further searches of his van, Goheen had smelled an overpowering scent of air freshener, observed that Zavala was unable to recall where he had stayed in Denver, and knew that Zavala and Lopez-Morales had criminal histories involving drugs. These factors, combined with the evidence suggesting the existence of a hidden compartment, furnished probable cause to continue searching Zavala's van. *Cf. United States v. Anderson*, 114 F.3d 1059, 1066 (10th Cir. 1997) (concluding probable cause existed when defendants gave conflicting or vague versions of their travel itinerary, when scent of air freshener emanated from the vehicle, when a passenger carried a pager, and when evidence suggested a hidden compartment in the vehicle).

In sum, Goheen's initial stop and questioning of Zavala and Lopez-Morales was proper, Goheen obtained valid consent from Zavala to ask additional questions and to conduct a search of the van; and, after Zavala allegedly withdrew that consent, Goheen's continued search was supported by probable cause. Accordingly, Zavala's Fourth Amendment rights were not violated, and the district

court did not err in denying Zavala's motion to suppress the marijuana found in his van.

**IV. Conclusion**

For the foregoing reasons, we **affirm** the decision of the United States District Court for the District of Kansas.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge