**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellant,

v.

JOSE JURADO-VALLEJO,

        Defendant - Appellee.

No. 03-3082

**ORDER**

Filed August 19, 2004

Before **SEYMOUR, HARTZ,** and **TYMKOVICH,** Circuit Judges.


      Upon the court's own motion, the order and judgment filed February 10, 2004 is

hereby published.  The opinion is filed as of February 10, 2004 and is attached, along

with the opinion after remand, to this order.



                              Entered for the Court
                              PATRICK FISHER, Clerk of Court


                              by:
                                    Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

FEB 10 2004

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

JOSE ALONSO JURADO-VALLEJO,

Defendant - Appellee.

No. 03-3082

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 02-CR-40115-01-JAR)

Richard A. Friedman, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C. (Eric F. Melgren, United States Attorney, Nancy Landis Caplinger, and Thomas G. Luedke, Assistant United States Attorneys, Topeka, Kansas, with him on the briefs), for Plaintiff - Appellant.

Melody Evans, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with her on the brief), Topeka, Kansas, for Defendant - Appellee.

Before **SEYMOUR**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

**HARTZ**, Circuit Judge.

Defendant, Jose Alonso Jurado-Vallejo, was indicted on two counts: (1) possession with intent to distribute more than five kilograms of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A); and (2) conspiracy to possess with intent to distribute more than five kilograms of a substance containing cocaine, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A) and 18 U.S.C. § 2. The incriminating evidence, 26 kilograms of cocaine, was obtained in a search of his sport utility vehicle. Ruling that the Kansas state trooper who conducted the search had neither probable cause nor consent to search the vehicle, the district court ordered that the evidence be suppressed. The government appeals the district court's suppression order and the denial of its motion to reconsider. Exercising jurisdiction under 18 U.S.C. § 3731, we remand the case to the district court for further proceedings.

## I. BACKGROUND

### A. Facts

On the morning of September 22, 2002, Defendant was driving his 2002 Ford Expedition on Interstate 70 in Kansas. Kansas Highway Patrol Trooper Greg Jirak, traveling in the passing lane, approached the vehicle from the rear and noticed a "beauty ring" bracket obscuring the license plate. He testified that he also observed modifications to the vehicle's bed and underbody that suggested the presence of a hidden compartment. In particular, there appeared to be a "lift" lowering the vehicle's underbody three inches from its bed, and the vehicle's bed was squared off, rather than rounded like the factory

model.  He also said that he could see a seam, which appeared to have been bonded and coated, where the compartment had been added.  The compartment was sizeable, running "from the backseats to the rear of the vehicle[,] and the entire width of the vehicle."  Aplt. App. at 13.

Jirak testified that in his experience such compartments are used to transport illegal drugs.  He had been personally involved in 12 to 15 prior stops in which similar compartments were built into the beds of pickup trucks or sport utility vehicles; on at least six of these occasions, the vehicle had the same type of lift.  Although he had not initiated the stop of such a vehicle for about five years prior to his stop of Defendant, he had been involved with the seizure and forfeiture of such a vehicle just a month or two earlier, and his total experience with hidden vehicle compartments used to transport drugs included more than 100 cases.

Jirak stopped Defendant for having an obscured license plate.  Defendant concedes that the license-plate violation justified the initial stop.  Once Defendant had pulled over, Jirak requested his driver's license and insurance information, which Defendant provided. (It became apparent that Defendant did not speak English, but he and Jirak communicated using hand signals and Jirak's rudimentary knowledge of Spanish.)  Jirak did not ask for registration papers, but he noticed that Defendant's vehicle had Mexican license plates issued by the state of Chihuahua.  Defendant had a Mexican driver's license, and his vehicle had been insured in Texas two days before, on September 20, 2002.  Jirak then

returned to his patrol car to write a warning citation for the license-plate violation. As he did so, he looked through the window into the cargo area of Defendant's vehicle and also glanced at its underbody.

Jirak called for backup and then walked to Defendant's vehicle to return his paperwork and give him the citation. After saying "adios," but before Defendant could pull away, he asked him, "puedo registro," Aplt. App. at 21, and Defendant responded affirmatively. Jirak believed that he was requesting permission to search the vehicle; but the district court credited testimony that "puedo registro" is an ungrammatical way of asking for Defendant's registration. Jirak motioned for Defendant to get out of the vehicle and Defendant complied. Jirak stooped down and inspected the rear driver's side wheel well for two to three seconds. He then commenced his search, accessed the hidden compartment through the vehicle's interior, and discovered approximately 26 kilograms of cocaine.

### B. Proceedings Below

In response to Defendant's motion to suppress, the government contended that Defendant consented to the search of his vehicle. The district court granted Defendant's motion, finding that "there was no probable cause to search the vehicle, and no valid consent to search." Aplt. App. at 88.

The government filed a motion for reconsideration, asking the district court to revisit its ruling on consent, and also contending that the search was supported by

probable cause. On February 27, 2003, the district court denied the motion. After examining this court's precedents on vehicle searches based on a police officer's suspicion of a hidden compartment, the district court ruled:

> Because Trooper Jirak did not obtain a valid consent he needed probable cause to search the Expedition. While his observations of what appeared to be a modification of the factory bed provided him with reasonable suspicion to further detain and investigate, he did not utilize that detention to confirm his suspicions and obtain probable cause to search. As such, the evidence must be suppressed.

Aplt. App. at 96. The government timely appealed to this court.

## II. ANALYSIS

On appeal the government argues that Jirak had probable cause to search Defendant's vehicle and was not required to conduct a more extensive examination to confirm his observation that the vehicle contained a hidden compartment. When reviewing a district court's ruling on a motion to suppress, "we accept [its] factual findings absent clear error and review *de novo* [its] determination of reasonableness under the Fourth Amendment . . . ." United States v. Olguin-Rivera, 168 F.3d 1203, 1204 (10th Cir. 1999). When reviewing for clear error its findings of fact, "[t]he credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." United States v. Browning, 252 F.3d 1153, 1157 (10th Cir. 2001) (internal quotation marks omitted).

"Probable cause to search a vehicle is established if, under the *totality of the circumstances* there is a fair probability that the car contains contraband or evidence."

United States v. Nielsen, 9 F.3d 1487, 1489-90 (10th Cir. 1993) (internal quotation marks omitted). "Probable cause is measured against an objective standard"; hence, "[t]he subjective belief of an individual officer as to whether there is probable cause . . . is not dispositive." United States v. Davis, 197 F.3d 1048, 1051 (10th Cir. 1999). "In determining whether probable cause exists, an officer may draw inferences based on his own experience." United States v. Mercado, 307 F.3d 1226, 1230 (10th Cir. 2002).

As this court has previously indicated, "It is well established that evidence of a hidden compartment can contribute to probable cause to search." Id.; see also United States v. Vasquez-Castillo, 258 F.3d 1207, 1213 (10th Cir. 2001) (finding probable cause to search based on evidence of hidden compartment and smell of raw marijuana); United States v. Anderson, 114 F.3d 1059, 1066 (10th Cir. 1997) (holding discovery of "what appeared to be a hidden compartment in the gas tank," along with other evidence, sufficient to furnish probable cause); United States v. Nicholson, 17 F.3d 1294, 1297-98 (10th Cir. 1994) (considering, among other factors providing probable cause, a "four- or five-inch difference in the truck bottom and the floor which indicated a hidden compartment designed to carry contraband"); United States v. Arango, 912 F.2d 441, 447 (10th Cir. 1990) (finding probable cause to arrest based in part on evidence of hidden compartment).

Whether probable cause to search a vehicle can be based on evidence of a hidden compartment depends on two factors: (1) the probative value of the evidence—that is,

the likelihood that there really is a hidden compartment; and (2) the likelihood that a vehicle with a hidden compartment would, in the circumstances, be secreting contraband. In this case the second factor is not a concern. If the vehicle had a hidden compartment, it was highly likely to contain contraband. Jirak testified that he had found evidence of drug activity whenever a hidden compartment had been discovered. This testimony is not challenged on appeal and apparently was credited by the district court. Moreover, this expert experience conforms with common sense; it is hard to conceive of a legitimate use for a large hidden storage compartment in any vehicle, let alone one with the cargo space of a Ford Expedition. We also note that it appeared that the vehicle had recently crossed into this country from Mexico, a common origin of illicit drugs.

The first factor, however, is problematic. It is unclear to us what facts were found by the district court regarding the evidence of a hidden compartment. On one hand, we could read the court's order as crediting all Jirak's testimony but ruling that probable cause could not be established unless he took steps to "confirm" or "verify" conclusively the existence of a hidden compartment. Such a requirement, however, would be incorrect. As the very words suggest, "probable cause" is a matter of probabilities. If there is a "fair probability" that the vehicle contains contraband, Nielsen, 9 F.3d at 1489-90, probable cause exists. Because we look to the totality of the circumstances, the law does not require greater proof—certainly not conclusive proof—of any particular factor establishing probable cause.

On the other hand, perhaps the district court did not believe, or at least did not fully credit, Jirak's testimony regarding the clarity of his observations or the extent of his knowledge of the structure of motor vehicles and hidden compartments. As Defendant points out on appeal, Jirak's testimony was partially contradicted by the videotape of the stop, he lacked experience observing modifications to 2002 Ford Expeditions, and it would have been difficult to observe modifications while traveling at 65 miles per hour. Without knowing what facts the district court found regarding what Jirak observed and his relevant experience, we cannot resolve whether there was probable cause to search.

In this regard we note one particular concern. As we understand the district court's order, the court did not take into account Jirak's observations when he stooped down to examine the rear wheel well for two to three seconds just before beginning his search. The court may have believed that the observations made at this time were legally irrelevant because Jirak had already decided to search the vehicle based on Defendant's putative consent. But the proper inquiry is what Jirak knew prior to commencing the search, not what he knew prior to obtaining consent. See United States v. Miller, 452 F.2d 731, 734 (10th Cir.1971) ("Would the facts available to the officer *at the moment of the . . . search* warrant a man of reasonable caution in the belief that the action taken was appropriate?" (quoting Terry v. Ohio, 392 U.S. 1, 21-22 (1968) (emphasis added))). On remand the district court should specifically indicate its findings regarding this observation by Jirak.

Accordingly, we REMAND this case to the district court for more detailed findings regarding Jirak's experience and observations. It may also reconsider its legal conclusions based on the law set forth in this order and judgment. We retain jurisdiction over this appeal pending supplementation of the record by the district court.

F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**AUG 19 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

   Plaintiff - Appellant,

  v.

JOSE ALONSO JURADO-VALLEJO,

   Defendant - Appellee.

No. 03-3082

---

### OPINION AFTER REMAND

---

Submitted on the briefs:

Eric F. Melgren, United States Attorney, Nancy Landis Caplinger, and Thomas G. Luedke, Assistant United States Attorneys, Topeka, Kansas; Richard A. Friedman, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C., for Plaintiff - Appellant.

David J. Phillips, Federal Public Defender, and Melody Evans, Assistant Federal Public Defender, Topeka, Kansas, for Defendant - Appellee.

---

Before **SEYMOUR**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

On remand the district court stated that it credited the following testimony by

Trooper Jirak:

> Trooper Jirak, a Kansas highway patrolman with more than 16 years of experience, has attended a number of courses and schools on narcotics interdiction and investigation. He has been involved in over 100 cases where hidden compartments have been used to transport narcotics; of these 100 plus cases, about 50 of them were cases he initiated.
>
> Prior to effecting the traffic stop of defendant, Trooper Jirak observed that the rear bumper of defendant's Ford Expedition appeared to be altered. Jirak observed that the bottom of the Expedition's rear bumper was "squared off," whereas the factory installed bumper on this model is tapered. Pulling alongside the Expedition for about one minute, and while traveling between 65 and 70 mph, Trooper Jirak was able to see inside the wheel well, which he testified was brightly illuminated by the sun. Jirak testified that inside the wheel well, he could detect the bottom of the Expedition's truck bed; and he was able to tell that the bottom of the truck bed was approximately 3 inches lower than the bottom of the hatchback door, where the bottom of the factory installed truck bed should be. Jirak testified that he could also see a seam that had been bonded and coated over, and that such a seam would not be present in an unaltered model of this vehicle.

Dist. Ct. Order on Remand, filed April 16, 2004, at 2-3. The district court further found:

> [B]ased on his observations prior to the stop, Jirak inferred that these perceived alterations evidenced a three inch void or discrepancy between the bottom of a factory installed truck bed and the bottom of the altered truck bed. Jirak certainly had the experience to make such an inference. He had handled approximately 12 to 15 cases in which a hidden compartment was constructed in a void created by a lift of the bed of the truck, as the hidden compartment in this case turned out to be. Jirak had also seen seams with undercoating where metal boxes or compartments had been added to the bottom of the truck bed. But the existence of a void was an inference, it is not something Jirak actually observed prior to the traffic stop.

Id. at 3.

-2-

Nevertheless, the district court reaffirmed its prior decision to suppress the evidence. It emphasized that before the search Jirak "never observed the passenger side of the vehicle or the wheel wells on the passenger side," id. at 4, and bent down to look at the driver's side rear wheel well for only three seconds, id. at 6. The court also noted that "Jirak did not touch or probe the rear driver side wheel well; he did not observe or inspect the other wheel wells; and he did not observe, inspect or touch the undercarriage of the vehicle." Id. at 7. The court explained:

> Jirak did not develop probable cause through sufficient observation and inspection prior to commencing the search. Prior to commencing the search, Trooper Jirak could have done a thorough visual inspection of the other wheel wells; he could have touched the alterations he saw in the wheel well; he could have poked, prodded or knocked on the wheel wells, bumper or fenders to attempt to ascertain whether there was a void as he suspected.

Id. at 10-11.

Although stating that it was "not suggesting that probable cause requires verification of the existence of a hidden compartment," id. at 11, the court went on to say:

> [P]robable cause is developed through careful observation and inspection that relies not only on the officer's vision, but use of the officer's other senses, such as touch, where possible. Often the totality of circumstances rendering probable cause includes other factors, as well, such as the odor of drugs, the odor of masking agents and/or suspicious statements or behavior by the defendant. Here, not only was there insufficient observation and inspection, there were not other circumstances that could factor into probable cause.

Id. at 11-12.

The district court should not have suppressed the evidence seized from

Defendant's vehicle. In our pre-remand opinion we indicated, although perhaps not sufficiently clearly, that if the district court credited Jirak's testimony, there was probable cause to search. The issue is not whether Jirak could have done more to confirm that the vehicle had a hidden compartment. None of the opinions cited by the district court said that visual observations must always be corroborated by touch, smell, or the like. Probable cause exists when the evidence "would warrant a [person] of reasonable caution to believe that evidence of a crime will be found at the place to be searched." United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1330 (10th Cir. 2003) (internal quotation marks omitted). Jirak's observations would warrant a reasonable belief that the vehicle contained a hidden compartment. And on the facts of this case, as we said before, "[i]f the vehicle had a hidden compartment, it was highly likely to contain contraband." United States v. Jurado-Vallejo, ___ F.3d ___, ___ (2004).

We REVERSE the order suppressing the evidence and REMAND for further proceedings.