**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 28, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ARCHY BELTRAN-LUGO,

      Defendant-Appellant.

No. 06-3279

(D. Kansas)

(D.C. No. 05-CR-10228-WEB)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **McCONNELL**, Circuit Judges.

## I.    Introduction

Defendant-Appellant Archy Beltran-Lugo was charged in a superseding indictment with drug and immigration crimes. Beltran-Lugo moved to suppress evidence obtained during a search of her Ford Explorer, arguing the initial traffic stop was not supported by reasonable articulable suspicion and the subsequent search of the vehicle was not supported by probable cause. The district court denied Beltran-Lugo's motion. She entered a conditional guilty plea and was

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentenced to eighty-four months' incarceration. Beltran-Lugo now appeals the district court's denial of her motion to suppress. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's ruling.

## II. Background

On November 21, 2005, Kansas Highway Patrol Trooper John Rule was patrolling highway I-70 in Ellis County, Kansas. As Rule traveled west, he passed a white Ford Explorer with Arizona specialty license plates traveling east. He noticed the rear of the Explorer was raised a little higher than normal and the inside of the rear wheel well was "extremely dark" and appeared to be freshly undercoated. Based on his training and prior experience with Explorers and other sport utility vehicles, Rule suspected the white Explorer had a false compartment. Specifically, Rule testified that when a false compartment is added to a vehicle, the rear is elevated slightly from what is normal for that particular vehicle.

Rule turned his patrol car around in the median and began to follow the Explorer in the eastbound lanes. As he closed the distance between himself and the Explorer, Rule passed an eastbound Ford Escape which had the same specialty Arizona license plate as the Explorer. Rule testified the plate was "a very rare tag" to see on I-70 in western Kansas.

When Rule caught up with the Explorer, he moved to the passing lane and maneuvered his patrol car so the passenger side window was even with the rear wheel well of the Explorer. From this vantage point, he testified he was able to

look deeper into the wheel well to examine it more closely. Rule saw fresh undercoating and what appeared to him to be a false floor compartment. Based on these observations, Rule decided to conduct a traffic stop and question the driver. He testified,

> I was up basically even with the vehicle. I backed off behind, getting ready to stop the vehicle. And as I was backing off behind the vehicle, I observed another patrol car parked on the right shoulder with a truck stopped. And at that time I backed completely off–I don't know–maybe six to eight car lengths behind the Explorer, attempting to give the driver of the Explorer room to move over, as is required by law [Kan. Stat. Ann. § 8-1530(b)(1)], to keep from hitting the other trooper. And I waited and that vehicle never came over. We passed the other trooper that was parked on the shoulder. Shortly thereafter, I activated my emergency lights and conducted a traffic stop.

Rule approached the passenger side of the vehicle and asked the driver, Beltran-Lugo, for her driver's license and title to the vehicle. Beltran-Lugo provided Rule with a driver's license from Mexico and told him she was traveling from Arizona to Kansas City. In response to Rule's questioning, Beltran-Lugo twice denied she was traveling in tandem with the Ford Escape. Rule testified he disbelieved Beltran-Lugo because he was confident she was traveling with the driver of the Escape.[1] According to Rule, individuals smuggling drugs often have escort vehicles traveling with them and, when asked, they often deny traveling together. His conclusion was also based on his observation that the specialty

---

[1]Trooper Steven Harvey conducted a traffic stop on the Ford Escape, arresting the driver, Eder Zamudio-Carillo. A false compartment in the Escape contained cocaine and heroin.

license plates on the two vehicles were not only identical, but sequentially numbered. He testified he believed the "odds of them not being together would be astronomical."

Rule then stepped to the rear of the Explorer, looked underneath, and confirmed the vehicle had a false floor running the length and width of the rear cargo area. Rule testified he had seen other vehicles with false compartments built the same way, with the same dimensions, and in his experience those compartments were used to haul contraband. Rule arrested Beltran-Lugo. He then ran his drug-detecting dog around the outside of the Explorer. The dog also entered the Explorer and Rule testified it "went to the rear of the vehicle and began indicating by scratching."

The Explorer was towed to the Kansas Highway Patrol Office in Hays, Kansas, where Rule opened the false compartment and found twenty-three kilograms of cocaine. Beltran-Lugo was charged in a superseding indictment with one count of possession with the intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1); one count of possession with the intent to distribute more than one kilogram of heroin, in violation of 21 U.S.C. § 841(a)(1); one count of travel in interstate commerce to promote an unlawful activity, in violation of 18 U.S.C. § 1952(a)(3); and one count of unlawful entry into the United States by an alien, in violation of 8 U.S.C. § 1325(a)(1). Beltran-Lugo filed a motion to suppress the evidence seized during

the search of her vehicle. The district court held a hearing on Beltran-Lugo's motion, listening to testimony from Trooper Rule, Orlando Martinez, an investigator for the Federal Public Defender's Office, and Ronald Dehart, an individual with thirty-two years of auto body repair experience. The district denied Beltran-Lugo's motion, concluding the initial stop of the Explorer was reasonable. The district court further concluded that Trooper Rule had probable cause to believe the Explorer contained a false compartment containing contraband and that Beltran-Lugo was committing a criminal offense. Accordingly, the district court ruled the arrest of Beltran-Lugo and subsequent search of the Explorer were reasonable under the Fourth Amendment. Beltran-Lugo entered a conditional guilty plea, preserving her right to appeal the denial of her motion to suppress. After she was sentenced to eighty-four months' imprisonment, she brought this appeal.

### III.  Discussion

When reviewing a district court's denial of a motion to suppress evidence, this court considers the totality of the circumstances, views the evidence in the light most favorable to the Government, and accepts the court's factual findings unless clearly erroneous. *United States v. Stephenson*, 452 F.3d 1173, 1176 (10th Cir. 2006). "The witnesses's credibility and the weight to be given evidence, together with all inferences and conclusions drawn from the evidence, are matters within the province of the district judge." *Id*. The ultimate determination of

reasonableness under the Fourth Amendment, however, is a question of law reviewed de novo. *Id*.

Beltran-Lugo's first challenge to the district court's ruling focuses on the justification for the traffic stop. *See United States v. Cline*, 349 F.3d 1276, 1286 (10th Cir. 2003) (stating the first step in our review of the constitutionality of a traffic stop focuses on "whether the officer's action was justified at its inception" (quotation omitted)). The district court concluded the stop was proper on two separate and independent grounds: (1) Rule's observations led him to reasonably conclude the Explorer may contain a false compartment and (2) without regard to Rule's actual subjective motivation in conducting the stop, at the time he initiated the stop he had observed Beltran-Lugo commit a traffic violation. In support of its alternative ruling, the district found as follows:

> Rule noticed in the distance ahead another Highway Patrol vehicle stopped on the right shoulder with its emergency lights flashing. The other KHP vehicle was being operated by Trooper Steve Harvey, who had stopped a semi-trailer and was conducting a commercial vehicle inspection. Trooper Harvey's car was about a half-mile or a mile ahead when Rule first saw it. Rule dropped back behind the Explorer to give it room to move over into the left-hand lane away from Trooper Harvey's car. Rule dropped back six or eight car-lengths and gave the driver of the Explorer sufficient time and room to move over, but she remained in the right-hand lane adjacent to Harvey's vehicle as she passed by that vehicle.

Beltran-Lugo does not challenge the district court's finding that she failed to move to a non-adjacent lane when she passed Trooper Harvey's patrol car.[2] Nor does she challenge the district court's conclusion that her failure to switch lanes gave Trooper Rule objectively reasonable articulable suspicion that she had violated Kan. Stat. Ann. § 8-1530(b)(1). *See United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001) ("While either probable cause or reasonable suspicion is sufficient to justify a traffic stop, only the lesser requirement of reasonable suspicion is necessary."). Her argument, instead, centers on Rule's subjective motivation for conducting the stop, the first basis upon which the district court concluded the stop was reasonable. She asserts the initial stop of her vehicle was improper because it is unreasonable to believe Rule saw modifications to her vehicle consistent with the construction of a false compartment while the two vehicles were traveling seventy miles per hour on the highway. Relying on her misreading of an opinion from the Seventh Circuit, she asserts the subsequent traffic violation cannot be used to justify the stop because facts that arose *after* Rule first decided to pull her over "are irrelevant to the question of whether reasonable suspicion existed." Appellant Reply Brief at 11.

[2]In her suppression motion, Beltran-Lugo argued she was unable to move to the non-adjacent lane because Trooper Rule's vehicle was in that lane at the time she passed Trooper Harvey. The district court, however, found there was "no credible evidence that the conditions were such that Ms. Beltran could not have safely moved her vehicle to the left lane as she passed by Trooper Harvey." On appeal, Beltran-Lugo does not renew her challenge to the circumstances surrounding the traffic violation.

The insurmountable problem with Beltran-Lugo's argument is that this court has previously rejected it. In *United States v. Cervine*, we held that once an officer observes a defendant commit a traffic violation, any prior subjective motivations he had for conducting a traffic stop have no bearing on whether the stop was reasonable under the Fourth Amendment. 347 F.3d 865, 870 (10th Cir. 2003); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). A traffic stop is reasonable under the Fourth Amendment if a police officer has a reasonable articulable suspicion the driver has committed a traffic violation. *Callarman*, 273 F.3d at 1287; *United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999). Thus, once Trooper Rule observed Beltran-Lugo commit the traffic violation by failing to move to the non-adjacent lane, the subsequent stop of her vehicle was justified.

Regardless of the propriety of the initial stop, Beltran-Lugo alternatively argues Trooper Rule did not have probable cause to search her vehicle. "Probable cause to search a vehicle exists if, under the totality of the circumstances, a fair probability exists that the vehicle contains contraband or other evidence which is subject to seizure under the law." *Stephenson*, 452 F.3d at 1177 (quotation omitted). Probable cause is evaluated by examining the historical facts viewed from the perspective of an objectively reasonable police officer. *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

In *United States v. Jurado-Vallejo*, this court considered whether evidence of a hidden compartment alone may provide probable cause to search a vehicle. 380 F.3d 1235, 1238 (10th Cir. 2004).

> Whether probable cause to search a vehicle can be based on evidence of a hidden compartment depends on two factors: (1) the probative value of the evidence–that is, the likelihood that there really is a hidden compartment; and (2) the likelihood that a vehicle with a hidden compartment would, in the circumstances, be secreting contraband.

*Id*. Beltran-Lugo only disputes whether the first part of this test was met, arguing the undercoating and jagged edge on the metal panel of the Explorer's wheel well were insufficient to warrant a person of reasonable caution to believe the Explorer contained a false compartment. She relies primarily on the testimony of her expert, Ronald Dehart, who has repaired five to six hundred Ford Explorers. At the suppression hearing, Dehart was shown photographs of Beltran-Lugo's vehicle. He acknowledged the vehicle had excessive undercoating but testified that was not unusual. When asked about the rough edge on the inner wheelhouse panel, Dehart testified its appearance was consistent with a sloppy repair job and that he would not have suspected it was part of a hidden compartment. On cross-examination, however, he admitted he had not personally examined Beltran-Lugo's vehicle and conceded he did not have experience detecting false compartments in vehicles.

Based on the testimony presented at the suppression hearing, the district court specifically found that after speaking to Beltran-Lugo, Trooper Rule visually inspected the rear of the Explorer and saw a panel wall with a jagged edge that was not factory-installed. The alteration to the panel wall was virtually identical to modifications Rule had previously seen on Ford Explorers to which hidden compartments had been added. Rule also observed the area was covered in a heavy layer of fresh undercoating which he reasonably inferred was an attempt to disguise the modification to the panel wall. Further, Rule believed Beltran-Lugo had lied when she denied traveling with another vehicle. This belief was supported by his observation that both vehicles bore the same specialty license plates which were sequentially numbered. Rule's conclusion was based on his experience that drug smugglers often travel in tandem with escort vehicles but deny this when asked.

These findings amply support the conclusion that Trooper Rule had probable cause to believe Beltran-Lugo's vehicle contained a hidden compartment containing contraband. *See United States v. Ledesma*, 447 F.3d 1307, 1316 (10th Cir. 2006) ("The ultimate question is whether the facts and circumstances within the officers' knowledge . . . are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." (quotations omitted)). Notwithstanding Beltran-Lugo's assertions, Dehart's testimony is not inconsistent with this conclusion. Dehart's visual observations

were identical to those of Trooper Rule and Dehart conceded he had no experience detecting false compartments. Because the search of Beltran-Lugo's vehicle was supported by probable cause, it was reasonable under the Fourth Amendment.

**IV.    Conclusion**

The judgment of the district court denying Beltran-Lugo's motion is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge