**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 13, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ISAAC WOODS, III,

      Defendant-Appellant.

No. 08-3245
(D.C. No. 6:07-CR-10221-MLB-09)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

---

Isaac Woods, III, challenges the district court's denial of his motion to suppress evidence under the Fourth Amendment. The evidence in question—two kilograms of a mixture containing a detectable amount of cocaine—was discovered by the police during a search of Mr. Woods's car following a traffic stop. Finding objective indicia of a traffic violation, reasonable suspicion for Mr. Woods's extended detention, and probable cause for the subsequent search of his car, we affirm the judgment of the district court.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

* * *

The case against Mr. Woods began with a 2007 police investigation of his eventual co-defendant, Tyrone Andrews, a known drug dealer in Wichita, Kansas. The police arranged for a confidential informant to buy cocaine from Mr. Andrews, and a search of garbage outside his suspected stash house turned up drug paraphernalia that tested positive for narcotics. On June 25, 2007, Mr. Andrews left his stash house during the time of day when the officers believed he made his drug deliveries. The police followed him to an apartment complex, which he eventually left accompanied by another man, Kevin Gunter. Though the police did not see the two communicate, Mr. Andrews was carrying an apparently empty black bag and Mr. Gunter a small white bag. All this suggested to police that Mr. Gunter was holding cocaine that Mr. Andrews had just sold him, and that they would do well to follow Mr. Gunter in an unmarked car. Mr. Gunter led officers to a residential area, where he met Mr. Woods. In a meeting that lasted just seconds, Mr. Gunter handed Mr. Woods a white package, which the police believed was the same one delivered by Mr. Andrews in the apartment complex. Mr. Woods then drove off, and the police decided to follow him, too.

While following Mr. Woods, Officer Michael Cox saw Mr. Woods fail to activate his turn signal 100 feet before turning, as required by Kansas state law. The officer did not stop Mr. Woods at that time, however. Instead, Officer Cox continued to follow Mr. Woods and eventually saw him pull from a private drive

into the center lane of traffic, rather than the curb lane. Believing that this turn also violated the traffic code, Officer Cox decided at this time to pull over Mr. Woods. During the traffic stop that followed, the officer smelled a strong odor of air freshener and marijuana emanating from Mr. Woods's car. As the traffic stop finished, Officer Cox asked Mr. Woods if he could search the car. Mr. Woods said no. At this point, Officer Cox asked Mr. Woods about the smell of marijuana emanating from his car, as well as if he had anything illegal in the vehicle. Officer Cox eventually asked Mr. Woods to get out of the car, which Mr. Woods did, failing to close the driver-side door in the process.

By this time, a member of the canine unit, Officer Jessie Hancock, arrived on the scene with a drug dog. Officer Hancock led his unleashed dog around Mr. Woods's car several times, and the dog alerted twice by breaking command to smell an area again, first the trunk and then the passenger side of the car. The dog also stuck its head into the car through the open passenger-side window. On the third pass around the car, the dog jumped into the open driver-side door and scratched at the center console. Upon questioning, Mr. Woods admitted that he had smoked marijuana in the car earlier in the day. The police then searched the car, finding marijuana residue in the console and two white packages—later identified as cocaine—in the trunk.

In due course, the federal government charged Mr. Woods, along with several co-defendants, with various crimes related to their alleged drug

conspiracy. Mr. Woods challenged his detention and the search of his car as a violation of the Fourth Amendment, but the district court found both constitutional, holding that the traffic violation justified the initial stop; that reasonable suspicion supported Mr. Woods's prolonged detention; and that the trained drug dog's instinctual—and consequently lawful—entrance of the car provided probable cause to search the trunk. After losing his suppression motion, Mr. Woods pled guilty to possession with intent to distribute, though he preserved his Fourth Amendment challenge for appeal. That is the sole issue before us now.

* * *

We review the legality of Mr. Woods's search and seizure *de novo*, though in doing so we are obliged to accept the district court's factual findings, unless clearly erroneous, and to view the evidence in the light most favorable to the prevailing party in the district court, here the government. *See United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1258 (10th Cir. 2006).

A traffic stop comports with the Fourth Amendment where reasonable and articulable suspicion exists to believe that a traffic violation has occurred. *See United States v. DeGasso*, 369 F.3d 1139, 1143 (10th Cir. 2004). Here, Officer Cox's observation of such a violation rendered the initial stop valid. Of course, Officer Cox ostensibly stopped Mr. Woods for making an illegal turn into the center lane, which, as it happens, wasn't actually a violation of Kansas law, as the government now concedes. *See* Answer Br. at 13-14. But Officer Cox's

- 4 -

subjective reasons for pulling over Mr. Woods are irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996). The district court heard Officer Cox's testimony and credited his account that Mr. Woods failed to signal within 100 feet of a turn shortly before Officer Cox effected the traffic stop. We cannot say that this factual determination was clearly erroneous, and the parties before us agree that the failure to signal within 100 feet of a turn is a traffic infraction under Kansas law. Accordingly, there was an objectively sound basis for stopping Mr. Woods, and we cannot say the stop was unlawful. *See United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 2005) ("Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." (quoting *Delaware v. Prouse*, 440 U.S. 648, 661 (1979))). Neither does Mr. Woods dispute that the illegal turn occurred shortly before the stop, or suggest that this factual basis supporting his stop had become stale. *See United States v. Laughrin*, 438 F.3d 1245, 1248 (10th Cir. 2006).

Although the initial traffic stop was lawful, the government concedes that Officer Cox detained Mr. Woods beyond the time it took to issue a traffic citation. The district court also found that this portion of the stop was not consensual. Accordingly, to sustain Officer Cox's continued detention of Mr. Woods for additional questioning and the dog sniff, the government needed to have reasonable suspicion by this point that Mr. Woods was involved in the

commission of a crime. *See United States v. Bradford*, 423 F.3d 1149, 1156-57 (10th Cir. 2005). In asking whether or not such reasonable suspicion existed, we look to the totality of the circumstances and ask "whether a particularized and objective basis, viewed from the standpoint of an objectively reasonable police officer, existed for suspecting legal wrongdoing." *United States v. Lopez*, 518 F.3d 790, 797 (10th Cir. 2008).

That standard is satisfied here, thus justifying Mr. Woods's continued detention. The police observed a known drug dealer, Mr. Andrews, enter a building and leave "accompanied by" another man, Mr. Gunter, during a time of day when Mr. Andrews was suspected of making drug runs. Mr. Andrews left the building with an apparently empty black bag and Mr. Gunter with a white bag, suggesting that a transaction had occurred between the two. Mr. Gunter then quickly passed a white package to Mr. Woods in an exchange that lasted only a few seconds and that the police believed "was a typical drug transaction in which the drugs were quickly exchanged." D. Ct. Order of Apr. 28, 2008, at 1-2; *cf. United States v. Santos*, 403 F.3d 1120, 1124 (10th Cir. 2005) (requiring reviewing courts to "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions"). Further, during the course of the traffic stop itself, Officer Cox smelled a strong odor of marijuana and air freshener emanating from Mr. Woods's vehicle. Though Officer Cox omitted that detail from his police report, the district court found his testimony on this score

truthful, and we cannot deem that finding clearly erroneous. Whether or not these facts could not sustain an arrest, which requires probable cause, the evidence necessary to support reasonable suspicion sufficient to sustain Mr. Woods's brief continued detention is "'considerably less' than proof by a preponderance of the evidence or that required for probable cause." *Lopez*, 518 F.3d at 799 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also United States v. Cervine*, 347 F.3d 865, 871 (10th Cir. 2003) (permitting the collective knowledge of all police involved in the criminal investigation to support reasonable suspicion). Though some (but not all) of these facts were known to law enforcement officers prior to Mr. Woods's traffic stop, and thus might provide an additional basis for justifying that stop, as we have already found an objectively reasonable basis for the traffic stop, we have no need to consider whether these same facts could support Mr. Woods's initial detention.

Having lawfully effected Mr. Woods's continued detention, the question still remains whether police could search his car for contraband. *See, e.g.*, *United States v. Clarkson*, 551 F.3d 1196, 1202-03 (10th Cir. 2009). Probable cause for such a search exists, among many other circumstances, when a reliable or trained drug dog "alert[s] to the odor of an illegal substance in the vehicle." *United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009). That is exactly what happened here. Officer Hancock's dog twice broke his command and stopped to smell a particular spot for a second time, and the dog also stuck its head into the

passenger side window, all of which indicated the presence of narcotics.  As we recently explained in *Parada*, this is sufficient to give rise to probable cause.  *Id.*  Mr. Woods argues that the police encouraged or facilitated the dog's entrance into the car, and that the dog's subsequent alert once in the car could not have provided probable cause for the search.  But because the dog alerted twice *before* jumping into the vehicle, how it got inside and whether it alerted once there is irrelevant:  probable cause to search existed before any of that transpired.

*  *  *

Mr. Woods's improper failure to signal a turn justified the initial traffic stop.  The smell of marijuana emanating from the car, as well as the officers' collective knowledge of the preceding suspicious interactions, provided reasonable suspicion to expand the length of Mr. Woods's detention.  And the drug dog's multiple signals that the car contained an illegal substance supplied probable cause for the search of the vehicle.  The judgment of the district court is therefore affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge