**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

LUIS CEBALLOS,

Defendant - Appellee.

No. 09-2021

(D. New Mexico)

(D.C. No. 1:08-CR-00994-JB-1)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McWILLIAMS**, and **MURPHY**, Circuit Judges.

I.      **Introduction**

Defendant-Appellee Luis Ceballos was charged in a multi-count indictment

with drug and firearm offenses.  The evidence supporting the charges was

obtained as a result of a traffic stop.  Ceballos moved to suppress the evidence,

arguing the stop was a seizure not supported by probable cause or reasonable

articulable suspicion.  The district court granted Ceballos's motion, rejecting the

Government's argument that the encounter between Ceballos and the officer was

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

wholly consensual and concluding the officer did not have reasonable articulable suspicion to initially detain Ceballos. The government filed this interlocutory appeal pursuant to 18 U.S.C. § 3731. Because we conclude the officer had reasonable articulable suspicion to temporarily detain Ceballos, we **reverse** the district court's ruling.

## II.     Background

On June 11, 2007, Officer Valentin Gallegos was patrolling an area in Taos, New Mexico, when he observed a person, later determined to be a teenage girl, dressed in dark clothing walking down a main road. Gallegos testified the pedestrian caught his attention because it was late at night, there was not much traffic, and she was wearing clothing that covered her face. While seated in his patrol car waiting for the pedestrian to pass in front of his headlights, Gallegos observed a white pickup truck slow down as it drove past the pedestrian. The truck continued along the main road for approximately fifty or sixty yards but then made a U-turn and traveled back toward the pedestrian. When the pedestrian left the main road and began walking eastbound down a residential side street, the truck also turned down the side street. Gallegos parked at the top of the side street and observed the truck pull up next to the pedestrian and stop.

Gallegos turned down the residential street and contacted the pedestrian. She told Gallegos the driver of the truck had offered her a ride but she declined, telling him she "just lived down the road in the condos." She also told Gallegos

she did not know the driver. Gallegos then watched the truck as it traveled eastbound down the street and pulled into a driveway. Instead of turning around and returning to the main road, however, the truck backed out of the driveway and parked just east of the driveway, pointed in the direction the pedestrian was walking. Gallegos testified the truck was stopped with its lights off in a very dark area of the road.

Gallegos activated his emergency lights and pulled up behind the truck. After calling in the license plate number, Gallegos got out of his patrol car and approached the truck. The driver, defendant-appellee Luis Ceballos, confirmed the female pedestrian had refused his offer of a ride. Gallegos testified he smelled alcohol on Ceballos's breath "almost immediately" after he started talking to him. Gallegos asked Ceballos for his license, registration, and proof of insurance. Ceballos admitted he did not have a driver's license but reached into his glove box to retrieve the registration and proof of insurance. As Ceballos leaned forward, Gallegos observed what appeared to be a rifle between the front seats. When asked, however, Ceballos denied possessing a weapon. At that point, Gallegos asked Ceballos to step out of the truck.

Gallegos placed Ceballos in the back seat of the patrol car and returned to Ceballos's truck to retrieve the firearm. While removing the firearm from the truck, Gallegos observed a large amount of cash scattered around the passenger seat and a wallet that could not close because it contained so much money.

Officers later discovered cocaine and an additional firearm in the vehicle. A pat-down search uncovered more cocaine and ammunition.

Ceballos was arrested and charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). He moved to suppress the evidence seized during the encounter with Officer Gallegos, as well as his post-arrest inculpatory statements. After an evidentiary hearing at which both Ceballos and Gallegos testified, the district court granted the motion, concluding the initial traffic stop violated the Fourth Amendment because it was a seizure not supported by reasonable articulable suspicion. The Government then brought this interlocutory appeal. *See* 18 U.S.C. § 3731.

## III. Discussion

When reviewing a grant of a motion to suppress evidence, this court accepts the district court's factual findings unless clearly erroneous. *United States v. Jurado-Vallejo*, 380 F.3d 1235, 1238 (10th Cir. 2004). The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law this court reviews de novo. *Id*. The Government does not challenge any of the district court's factual findings. Instead, its appeal focuses on the district court's ruling that the initial detention was not reasonable under the

Fourth Amendment because it was not justified by reasonable articulable suspicion.[1] *See United States v. Cline*, 349 F.3d 1276, 1286 (10th Cir. 2003) (stating the first step in our review of the constitutionality of a traffic stop focuses on "whether the officer's action was justified at its inception" (quotation omitted)).

The district court based its ruling, in part, on Gallegos's testimony that he was acting on a "hunch" when he stopped Ceballos. *See United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (reiterating that unparticularized hunches about criminal activity are not sufficient to justify an investigative detention under the Fourth Amendment). But Gallegos's subjective characterization of his actions is irrelevant. *See United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009). This court judges his "conduct in light of common sense and ordinary human experience, and we accord deference to an officer's ability to distinguish between innocent and suspicious actions." *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001) (quotation and citation omitted).

A review of the totality of the circumstances shows Gallegos was not acting on an unparticularized hunch; during his testimony he articulated specific facts that caused him to suspect Ceballos intended to assault or abduct the teenage pedestrian. Specifically, at the time Gallegos initiated the traffic stop, he had

---

[1]The Government does not appeal the district court's ruling that the encounter between Gallegos and Ceballos was an investigative detention.

observed Ceballos slow his vehicle as he passed a teenage girl walking alone late at night. He then observed Ceballos alter his route by making a U-turn and following the girl down a narrow, nearly deserted residential street. Ceballos pulled alongside the girl, who he did not know, and asked her if she wanted a ride. She refused, telling him she lived up the street. Ceballos then drove further down the road, pulled into a driveway as if to turn around and return to the main road, but instead backed out and drove a few feet further east, in the same direction the girl was walking. He parked in a dark location and turned off his lights.

The district court summarized this evidence as "a young man in a pickup talking to a woman walking down the street." This statement greatly oversimplifies the situation and ignores many relevant facts that support the objective reasonableness of the investigative detention. Additionally, the district court's observation that the teenage pedestrian did not manifest any apprehension or seem concerned for her safety does not negate Officer Gallegos's reasonable suspicion in any way. *See United States v. Johnson*, 364 F.3d 1185, 1187, 1191-92 (10th Cir. 2004).

We agree with the Government that Officer Gallegos had reasonable suspicion to stop and detain Ceballos. Ceballos showed an interest in a teenage girl he did not know, to the point that he changed his route to follow her down a dark street, offered her a ride, and then parked where the girl would be required to

-6-

walk past him as she continued to her home. The facts found by the district court, viewed in totality, amply support the constitutionality of the investigative detention.[2]

## IV. Conclusion

The judgment of the district court granting Ceballos's motion to suppress is **reversed** and the matter **remanded** for further proceedings not inconsistent with this opinion.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

---

[2]Because we conclude Officer Gallegos had reasonable suspicion to stop and detain Ceballos, it is unnecessary to address the Government's alternative argument that the stop was valid because Gallegos observed Ceballos commit a traffic violation. *See United States v. Woods*, No. 08-3245, 2009 WL 3262018, at *3 (10th Cir. Oct. 13, 2009).